```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
─────────────────────────────────────────

GOTTLIEB, RACKMAN & REISMAN, P.C.,

                Plaintiff,              13 Cv. 5715 (JGK)

      - against -                  MEMORANDUM OPINION
                                                          AND ORDER

ZENCOLOR CORPORATION ET AL.,

                Defendants.
─────────────────────────────────────────

**JOHN G. KOELTL, District Judge**:

    The plaintiff Gottlieb, Rackman & Reisman, P.C. ("GRR") moves to dismiss the amended counterclaims asserted by the defendants, ZenColor Corporation and Danger Management & Media, Inc. (collectively, "Zen"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. GRR sued Zen to recover unpaid legal fees and to receive a declaration that an agreement (the "Fee Agreement") requires Zen to pay GRR a percentage of revenues from licensing Zen's patents in exchange for a reduction in legal fees. (Am. Compl. at 9.)

    Zen responded with counterclaims for legal malpractice that it initially claimed were worth in excess of $500 million. (Answer at 18.) After the Court expressed skepticism how the counterclaimants could conceivably seek $500 million, Zen filed five amended counterclaims in which it seeks in excess of $100,000 in damages for malpractice by GRR and a sixth amended counterclaim that seeks rescission of the purported Fee

1

Agreement.  (Zen Am. Countercls. ("ZAC") at 21–22.)  With the parties' consent, the Court previously dismissed the sixth amended counterclaim with prejudice.  (Dkt. No. 66.)  GRR now argues that the remaining amended counterclaims should be dismissed.

For the reasons explained below, GRR's motion to dismiss Zen's amended counterclaims is **granted in part and denied in part**.

## I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the counterclaims are accepted as true, and all reasonable inferences must be drawn in the pleader's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).  The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the [counterclaims themselves are] legally sufficient."  Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).  The Court should not dismiss the counterclaims if the pleader has stated "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the [pleader] pleads factual content that allows the court to draw the reasonable inference that the [opponent] is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009).  While the Court should construe the factual allegations in the light most favorable to the proponent, "the tenet that a court must accept as true all of the allegations contained in the [counterclaims] is inapplicable to legal conclusions."  Id.

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the counterclaims, documents that the pleader relied on in bringing suit and that are in the pleader's possession or that the pleader knew of when bringing suit, and matters of which judicial notice may be taken.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

**II.**

The following facts in the amended counterclaims are accepted as true.

**A.**

On or about October 21, 2011, Zen entered into a retainer agreement with GRR, pursuant to which GRR would provide patent-related services to Zen.  (ZAC ¶ 1.) Zen intended to patent its color technology.  (ZAC ¶ 4.)  Zen contends that GRR originally represented that the legal fees for these filings would be approximately $25,000.  When it became apparent to GRR that the color technology was more complex than anticipated, GRR revised its fee estimate to no more than $75,000.  (ZAC ¶ 5.)  Before preparing the applications, GRR performed a search to identify

3

prior patent applications and patents that could impact the patentability of Zen's new technology. (ZAC ¶ 6.) This "prior art" search was critical because, consistent with the Patent Cooperation Treaty ("PCT"), the United States Patent and Trademark Office ("USPTO") would reject any claims within a patent that were based on prior patents or patent applications. (ZAC ¶¶ 6-7.)

On or about February 7, 2012, GRR filed a "provisional patent" application with the USPTO entitled "System And Method of Color Based Recommendation" (the "First Provisional Patent Filing"). (ZAC ¶ 9.) Zen alleges that the First Provisional Patent Filing did not address the core of its color technology despite Zen's repeated insistence on its importance. (ZAC ¶ 10.)

By early summer 2012, a GRR associate became the primary drafter of the Zen patent applications. Zen alleges that it was unaware that the associate lacked the experience or training required to prepare a patent application as complex as the Zen color technology. (ZAC ¶ 11.) On or about June 6, 2012, GRR filed a provisional patent application with the USPTO entitled "Product Identification And Searchable Format" (the "Second Provisional Patent Filing"). (ZAC ¶ 13.) Zen alleges that like the First Provisional Patent Filing, the Second Provisional Patent Filing was devoid of crucial information. (ZAC ¶ 14.)

In or about July 2012, Zen told GRR that it should not file any additional provisional patent applications. Zen instead asked GRR to concentrate on the non-provisional patent applications for "normalizing colors" into a universal digital color system and digital color-based search, the intended subject of the First Provisional Patent Filing. (ZAC ¶ 15.) Zen claims that GRR disregarded its directive and filed a provisional patent application with the USPTO entitled "Consumer and Business Shopping Tools" (the "Third Provisional Patent Filing") in August 2012. (ZAC ¶ 16.) Zen alleges that the Third Provisional Patent Filing was so poorly drafted that it had difficulty understanding what patent GRR had described. As a result of these deficiencies, GRR filed a fourth provisional patent application on or about March 15, 2013 to remedy the previous filing's defects. (ZAC ¶¶ 17–18.)

As of December 2012, Zen had paid GRR over $100,000 in legal fees, a figure surpassing the original $25,000 quote and the later $75,000 estimate by GRR. (ZAC ¶ 20.)

On or about January 10, 2013, GRR appointed a committee of attorneys to assist its associate in drafting the first non-provisional patent application. (ZAC ¶ 23.) Based on the committee's work, GRR billed Zen a total of approximately $245,000. (ZAC ¶ 25.)

In or about January 2013, Zen stopped paying GRR because of GRR's alleged malpractice. (ZAC ¶ 26.) Zen complained to GRR concerning GRR's and excessive legal expenses in January and February 2013, but GRR's representative allegedly told Zen that these complaints "fell on deaf ears." (ZAC ¶ 27.) In or about April 2013, Zen terminated GRR's representation. (ZAC ¶ 28.)

**B.**

On or about February 6, 2013, GRR provided its final draft of the first non-provisional patent application to Zen. (ZAC ¶ 30.) Zen alleges that this draft had spelling and grammatical errors, included antiquated and inaccurate diagrams, and incorrectly described the key elements of Zen's invention for color normalization. (<u>Id.</u>) On or about February 7, 2013, GRR filed an application entitled "Color Based Identification Searching And Enhancement of Supply Chain And Inventory Management System Feeds" with the USPTO (the "First Non-Provisional Patent Application"). (ZAC ¶ 32.) Zen alleges that the First Non-Provisional Patent Application did not sufficiently describe or explain Zen's color normalization concept and was replete with technical deficiencies with respect to its disclosures of prior art. (ZAC ¶¶ 33-36.) As a result, Zen hired substitute counsel to complete the application by filing the parts omitted by GRR. The USPTO rejected twenty-six of the fifty-two claims in GRR's First Non-Provisional Patent

Application.  (ZAC ¶ 40.)  Zen alleges that the USPTO rejected the claims because GRR failed to disclose and distinguish prior art.  (Id.)

Zen retained new counsel to write new patent applications.  (ZAC ¶ 42.)  Zen alleges that these new applications accurately reflected Zen's instructions and sufficiently explained Zen's technology such that Zen was issued a patent on December 3, 2013, Patent No. 8,600,153 B2.  (ZAC ¶ 45.)

On or about February 7, 2013, GRR filed its second non-provisional patent application entitled "Mobile Shopping Tools Utilizing Color Based Identification, Searching And Matching Enhancement Of Supply Chain And Inventory Management System Feeds" (the "Second Non-Provisional Patent Application").  (ZAC ¶ 52.)  Zen alleges that despite the distinct similarities between the First Non-Provisional Patent Application and Second Non-Provisional Patent Application, GRR charged Zen $45,517 to prepare the second application.  (ZAC ¶¶ 53-54.)  Further, Zen contends that GRR omitted relevant prior art in the second application, resulting in the USPTO's rejection of all sixty-three listed claims.  (ZAC ¶¶ 54, 59.)  Because of the claimed malpractice, Zen allegedly suffered losses consisting of the fees it paid GRR for the Second Non-Provisional Patent Application and the additional attorneys' fees and filing fees

7

for its new counsel to prepare a new patent application. (ZAC ¶¶ 59-60.)

On or about April 5, 2013, GRR filed a third non-provisional patent application, entitled "Digital Marketing Platform With Formatted Advertising Feature Coupled To Normalized Inventory Management System And Supply Chain Management System Feeds" (the "Third Non-Provisional Patent Application"). (ZAC ¶ 63.) Zen alleges that GRR failed to include the core technology that Zen requested and the concepts integral to Zen's patent, resulting in the USPTO rejecting all fifty-eight claims. (ZAC ¶¶ 64-65, 71.) As a result of GRR's alleged malpractice, Zen alleges that it incurred losses consisting of $52,692 in legal fees charged by GRR and additional attorneys' fees and costs from new counsel. (ZAC ¶ 71.)

Zen also contends that GRR committed malpractice by disclosing Zen's trade secrets. In or about October 2012, Zen met briefly with a potential licensee and competitor to discuss a meeting between the two companies pertaining to Zen's color software systems. (ZAC ¶ 74.) Following this meeting, Zen advised a GRR associate to prepare a Non-Disclosure Agreement ("NDA") before sending any materials to the competitor. (ZAC ¶ 75.) The associate advised Zen that an NDA was not needed and that any confidential information provided to the competitor

8

would be protected.  (Id.)  The associate then forwarded the materials to the competitor.  (ZAC ¶ 76.)  In March 2013, news outlets revealed that Zen's competitor was using real-time color data analytics in its software, a core Zen concept explained in detail in the materials that the associate provided the competitor.  (ZAC ¶ 79.)  Zen argues that until new patent applications are drafted, it is unprotected against the competitor's use of Zen's concepts and technology.  (ZAC ¶ 83.)  As a result of GRR's alleged malpractice, Zen maintains that it suffered a competitive disadvantage.  (ZAC ¶ 86.)

Zen also alleges that during the course of its representation, GRR overbilled Zen for legal services by: billing a minimum time charge for certain services instead of actual time worked; billing for attorney work rejected by Zen; billing for attorney redrafting services to correct GRR's errors; billing for the services of additional attorneys to work on Zen matters in January and February 2013 without the prior consent of Zen; billing for hotel and restaurant charges due to GRR's inability to complete its services within a reasonable amount of time; billing attorneys at higher rates than initially disclosed; billing pass-through costs with an undisclosed mark-up instead of actual costs; and billing Zen almost five times the GRR estimate.  (ZAC ¶ 90.)

Zen also sought a declaration judgment rescinding a Proposed Fee Agreement on the grounds of impossibility. (ZAC ¶¶ 97-98.) With the parties' consent, the Court dismissed that counterclaim with prejudice pursuant to Rule 41(a) of the Federal Rules of Civil Procedure. (Dkt. No. 66.)

### III.

In order to state a claim for legal malpractice under New York law, Zen must demonstrate that an attorney-client relationship existed between it and GRR, that GRR's representation was negligent, that such negligence was the proximate cause of the loss sustained by Zen, and that Zen suffered actual and ascertainable damages. Maddux v. Schur, 791 N.Y.S.2d 704, 705 (App. Div. 2005).

GRR argues that Zen has insufficiently pleaded proximate causation and damages. However, Zen "is not obliged to show, at this stage of the pleadings, that [it] actually sustained damages . . . [it need only plead] allegations from which damages attributable to [GRR's conduct] might be reasonably inferred." InKine Pharm. Co. v. Coleman, 759 N.Y.S.2d 62, 63 (App. Div. 2003); see also Schutz v. Kagan Lubic Lepper Finkelstein & Gold, LLP, No. 12cv9459, 2013 WL 3357921, at *7 (S.D.N.Y. July 2, 2013). Four of Zen's malpractice claims sufficiently allege damages that were proximately caused by GRR's alleged malpractice.

**A.**

In its first amended counterclaim, Zen alleges that GRR committed malpractice in the drafting of the First Non-Provisional Patent Application. As a result, Zen contends that it had to hire substitute counsel and file a new application. It seeks to recover the cost of the attorneys' fees expended on the new counsel. Under New York law, the allegation of damages and proximate causation in the first amended counterclaim is sufficient.

The New York Court of Appeals has held that damages for legal malpractice may include the attorneys' fees and litigation expenses "incurred in an attempt to avoid, minimize, or reduce the damage caused by the attorney's wrongful conduct." Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer, 867 N.E.2d 385, 388 (N.Y. 2007) (quoting DePinto v. Rosenthal & Curry, 655 N.Y.S.2d 102 (App. Div. 1997)); see also Affiliated Credit Adjustors, Inc. v. Carlucci & Legum, 527 N.Y.S.2d 426, 428 (App. Div. 1988) (holding that malpractice damages may include fees "incurred in retaining alternate counsel to perform the services for which the defendants were originally retained").

It is immaterial that the counterclaims do not discuss a method for computing general damages. "There is no requirement that the measure of damages shall be correctly set forth in a complaint, the test being merely whether or not the complaint

11

sets forth allegations from which damages can properly be inferred." Daukas v. Shearson, Hammill & Co., 270 N.Y.S.2d 760, 762 (App. Div. 1966).  Therefore, Zen's allegation of incurred damages stemming from GRR's alleged malpractice is sufficient.

Zen has also sufficiently pleaded proximate causation in relation to its first amended counterclaim.  To survive a motion to dismiss, Zen "need only allege, not prove, the proximate cause element of the legal malpractice claim." Even St. Prods., Ltd. v. Shkat Arrow Hafer & Weber, LLP, 643 F. Supp. 2d 317, 322 (S.D.N.Y. 2008); see also Shaya B. Pac., LLC v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, 827 N.Y.S.2d 231, 235 n.2 (App. Div. 2006) ("Causation—or lack thereof—may properly be challenged by way of a motion for summary judgment once a factual record has been developed.").  Zen has identified the specific legal malpractice allegedly committed by GRR with respect to the First Non-Provisional Patent Application, and has therefore satisfied its pleading requirements concerning the first amended counterclaim.  Therefore, GRR's motion to dismiss the first amended counterclaim is **denied.**

### B.

In its second and third amended counterclaims, Zen alleges that GRR negligently prepared the Second and Third Non-Provisional Patent Applications.  The damages Zen alleges are, in part, the cost of attorneys' fees that incurred and the costs

it will incur in hiring new counsel to correct the applications that GRR prepared. (ZAC ¶¶ 60, 71.) At least the costs incurred in hiring new counsel to correct GRR's alleged errors is a sufficient allegation of ascertainable damages. There are sufficient allegations so that GRR's motion to dismiss the second and third amended counterclaims is **denied.**

### C.

Zen's fourth amended counterclaim alleges that GRR tortiously disclosed Zen's trade secrets. According to Zen, GRR advised that an NDA was not needed and then provided Zen's competitor with proprietary information.

Zen has sufficiently pleaded a claim for legal malpractice. While it is difficult to determine definitively the monetary value of this loss of information, Zen has adequately alleged damages and proximate causation resulting from the loss of the information. Thus, GRR's motion to dismiss the fourth amended counterclaim is **denied.**

### D.

The fifth amended counterclaim alleges that GRR committed legal malpractice by excessively and improperly billing Zen. To sustain a claim for legal malpractice, Zen must establish that but for GRR's alleged negligence, Zen would have been successful in or not suffered damages in some underlying proceeding or transaction. See <u>AmBase Corp. v. Davis Polk & Wardwell</u>, 866

N.E.2d 1033, 1036 (N.Y. 2007). Thus, allegations of improper billing—standing alone—do not state a claim for legal malpractice. See, e.g., Byrne & Storm, P.C. v. Handel, No. 12cv716, 2013 WL 2444092, at *4 (N.D.N.Y. June 5, 2013); Chowaiki & Co. Fine Art v. Lacher, 982 N.Y.S.2d 474, 476 (App Div. 2014).

Zen's alleges only that GRR's billing practices were improper. Zen contends that GRR's time records were inaccurate, that Zen did not agree to the hourly rate that GRR charged, and that GRR should not have billed for some the work that it performed. (ZAC ¶¶ 90-91). But Zen does not allege that but for this improper billing, its patent applications would have been approved.

These allegations may support a counterclaim for breach of fiduciary duty, see, e.g., Cherry Hill Mkt. Corp. v. Cozen O'Connor P.C., 987 N.Y.S.2d 146, 147 (App. Div. 2014), or a counterclaim for breach of contract. See, e.g., Shaub & Williams, L.L.P. v. Augme Techs., Inc., No. 13cv1101, 2014 WL 625390, at *6 (S.D.N.Y. Feb. 14, 2014); O'Connor v. Blodnick, Abramowitz & Blodnick, 744 N.Y.S.2d 205, 206 (App Div. 2002). But Zen alleged no such counterclaims.

Accordingly, the motion to dismiss the fifth amended counterclaim is **granted**.

14

**CONCLUSION**

The Court has considered all of the remaining arguments of the parties.  To the extent not specifically addressed above, they are either moot or without merit.  For the foregoing reasons, GRR's motion to dismiss Zen's amended counterclaims is **granted in part and denied in part.  The Clerk is directed to close Docket Number 54.**

**SO ORDERED.**


**Dated:    New York, New York**
**         July 10, 2015**                    _____/s/_____
                                                  **John G. Koeltl**
                                          **United States District Judge**